## Wilson, &c. *vs.* Soper, &c.

### ERROR TO BOURBON CIRCUIT.

CHANCERY.

Case 21.

December 30.

13bm411
104 360

13bm411
108 391

Judge SIMPSON delivered the opinion of the court.

1. Upon the dissolution of a partnership by the death of one partner, the personal representative of the deceased partner becomes tenant in common with the survivor, of all the partnership property and effects in possession, but as to mere *choses* in action, debts, and other rights of action belonging to the partnership, they vest in the survivor. (*Gow on Part. chap.* 5, §4, 377; *Story on Part.* §346, 517.) To the survivor belongs the right to dispose of the partnership effects, pay the debts, &c.

2. The administrator of a deceased partner may sell the individual interest of his intestate in the partnership property on hand, and thereby vest the surviving partner with a perfect title to the whole. So may one partner upon a voluntary dissolution, sell to another, free from any claim of creditors, if the transaction be *bona fide* and upon good consideration. (*Story on Part.* §358, 536.) It is the right of one partner to assert a lien on the partnership property to pay the debts of the partnership. (3 *Kent's Com.* 65; *Story on Part.* §350, 528.)

3. Advances to the firm by one of its members, do not constitute debts of the firm, but merely matters of account between the partners, to be settled in the final adjustment of the partnership. (*Story on Part.* §348, 522; 7 *B. Monroe,* 609.)

4. A surviving partner having purchased the interest of the representative of his deceased partner, may lawfully make an assignment; and the beneficiaries in the deed have a right to the proceeds, as well as the debts subsequently created to him, after the purchase.

5. A surviving partner having the right to control the assets to pay the debts of the firm, may lawfully pay any of the debts, and prefer some creditors to others; and if an assignment be made preferring one creditor of the firm to another, the administrator of the deceased partner cannot complain, if the assets be all appropriated to the firm debts.

6. The administrator of a deceased partner has a right to have the assets of the firm appropriated to the payment of the partnership debts; but if he sell the goods on hand to the survivor, they are converted, and become the individual property of the survivor.

WILSON, &c.
*vs.*
SOPER, &c.

WILSON, &c.
vs.
SOPER, &c.

The claim of the creditors of a partnership to satisfaction out of the partnership assets, is superior to the claim of a separate creditor under a deed of trust, if the trustee knew their character.

7. Where an administrator pays over to the guardian, he has a right to have refunded to him so much of the fund as is necessary to pay debts.

8. The sureties of a guardian are responsible to an administrator for the amount which it becomes the duty of the guardian to refund to the administrator, to pay debts against the estate.

Case stated.

Mark Duvall and Samuel J. Duvall were partners in merchandising, and at the time of the death of the latter, which occurred in September, 1849, the firm owed a debt of considerable magnitude. After his death, J. J. Moore administered on his estate, and in conjunction with Mark Duvall, the surviving partner, made an invoice of the stock of merchandise on hand; one-half of which the administrator sold to the surviving partner, and took his note for the price, with the understanding that the contract of sale was not to be considered executed until the purchaser gave security for the payment of the purchase money. The parties afterwards agreed that the purchaser should be appointed guardian for the children of the deceased partner, and when he was so appointed, and had given bond with security, the sale should be regarded as consummated, and the price of the goods remain in his hands as guardian. He was accordingly appointed guardian, and having executed bond with security, was considered as the owner of the goods by purchase, and used them as his own individual estate. He subsequently executed a deed of trust, transferring all the goods on hand, and all the debts due to the firm, and such as had accrued during the time that he had carried on the business in his own name after the death of his partner, and other individual property and effects to trustees, to be applied to the payment of certain designated debts in the order prescribed by the deed of assignment.— Some of his creditors exhibited their bills in chancery, impeaching the deed upon the ground of fraud. The administrator of the deceased partner filed a bill, insisting that he had a lien on the whole of the partner-

ship assets for the payment of the partnership debts, and that this lien was available against the deed of assignment. Several of the partnership creditors were made parties in the suits, who also asserted a claim to a lien on the partnership effects for the payment of their debts. All the suits were consolidated and tried together.

The circuit court decreed that the partnership creditors were entitled to the proceeds of all the goods contained in the deed of trust, and also all the debts due for merchandise, including those that were created after the dissolution, as well as those that were due to the partnership, and also that they were entitled to the price of the goods sold by the administrator to the surviving partner, for which he and his sureties in his guardian's bond were held liable; but the property embraced in the deed of trust, which the guardian had conveyed for the indemnity of his sureties, and which was his own individual estate, was first subjected to the satisfaction of this liability.

The sureties in the guardian's bond, and the beneficiaries under the deed of trust, have appealed from that decree.

The circumstances relied upon to establish fraud in the execution of the deed of trust, we deem insufficient for that purpose, so that the questions presented for consideration, are those that arise out of the sale made by the administrator of the deceased partner, and the subsequent execution of the deed of trust by the surviving partner.

1. Upon the dissolution of a partnership by death, the personal representative of the deceased partner becomes tenant in common with the survivor of all the partnership property and effects in possession, there being a distinction between such property in possession, and mere choses in action, debts, and other rights of action belonging to the partnership, which vest in the survivor. (*Gow on Part.* ch. 5, §4, *p.* 377; *Story on Partnership*, §346, *p.* 517.) The surviving partner, however, has the right to control and dispose of

1. Upon the dissolution of a partnership by the death of one partner, the personal representative of the deceased partner becomes tenant in common with the survivor, of all the partnership property and effects in possession; but as to mere *choses*

WILSON, &c.
vs.
SOPER, &c.

in action, debts, and other rights of action belonging to the partnership, they vest in the survivor. (*Gow on Part. chap.* 5, §4, 377; *Story on Part.* §346, 517. To 'the survivor belongs the right to dispose of the partnership effects, pay the debts, &c.

2. The administrator of a deceased partner may sell the individual interest of his intestate in the partnership property on hand, and thereby vest the surviving partner with a perfect title to the whole. So may one partner upon a voluntary dissolution, sell to another, free from any claim of creditors, if the transaction be *bona fide* and upon good consideration. *Story on Part.* §358, 536. It is the right of one partner to assert a lien on the partnership property to pay the debts of the partnership. (3 *Kent's Com.* 65; *Story on Part.* §350, 538.)

the partnership effects for the purpose of paying the partnership debts and liabilities, and to settle and wind up the business of the firm.

2. As the administrator of the deceased partner was tenant in common with the survivor, of the partnership effects in possesson, it results that he had the power to sell and dispose of one undivided moiety of the stock of goods on hand, and thereby vest the surviving partner with the title to the whole stock. It is competent for the partners, in the case of a voluntary dissolution, to agree that the joint property of the partnership shall belong to one of them, and if the agreement be made in good faith and for a valuable consideration, it will transfer the whole property to such partner free from the claims of the joint creditors. (*Story on Part.* §358, *p.* 536.) This result would seem necessarily to ensue in such a case, from the principle that the creditors of the partnership have no lien upon the partnership effects for their debts; but whenever such a lien can be asserted, it is derived from one of the partners, and is the equity of the partner operating to the payment of the partnership debts. (3 *Kent's Com.* 65; *Story on Part.* §360, *p.* 538.) Being derivative merely, it fails whenever the partner has done any act by which he has divested himself of the lien, the benefit of which is claimed by the creditors. If the agreement by which the right to the partnership effects is transferred to one of the partners, by the other partner, be fraudulent, and done with the intent to defeat the creditors in the collection of their debts, they would have a right to apply to a court of chancery to be relieved from the effect of the fraud; but, in such a case, they would have an original and independent equity not derived from the partner who made the transfer, but founded on the fraudulent conduct and acts of the parties to the transaction.

We are not able to perceive any good reason why the sale made by the administrator, to the surviving partner, of the stock of merchandise on hand, should not have the same effect that a sale made by his in-

testate in his lifetime would have had. Such a sale would have invested the purchaser with a full and complete title to the property, discharged from the lien of his partner, and the *quasi lien* of the joint creditors. As the administrator was tenant in common with the surviving partner of the goods on hand, the sale made by him vested the purchaser with the absolute title to them. The partnership goods were converted by the sale into individual property, the community of interest was terminated, and the lien resulting from the partnership was, as a necessary consequence, parted with and surrendered.

There is a marked distinction between this and the case of *Smith* v. *Haviland*, referred to by the chancellor in the decision of the case of *Diveau* v. *Fowler*, 2 *Payne's Chancery Reports*, 400. There the administrator of a deceased partner assigned all his *interest* in the partnership effects to the survivor, under an agreement that the latter should pay and discharge all the debts of the firm, and it was decided, that the agreement only transferred the interest of the administrator in the surplus after the payment of debts, and consequently did not destroy his lien or equity to have so much of the partnership property applied to the payment of the debts as was necessary for that purpose. The ground of that decision was evident. The *interest* of the administrator in the partnership effects was all that was sold. It was the same interest which his intestate had, and which, if assigned by him in his lifetime, would only have invested the purchaser with the assignor's share of the surplus, if any there should be, after the partnership affairs were fully wound up. But in this case the administrator sold to the survivor one half of the goods specifically, not subject to the payment of debts, but for their full value and without any reservation. By the purchase the goods became the sole property of the purchaser, and the proceeds of the sale were assets in the hands of the administrator. It does not appear that the parties made any arrangement for the payment of the

debts, but it may be inferred from their conduct, that they regarded the debts due to the firm as sufficient to discharge all of its liabilities, and that the administrator relied upon that portion of the assets of the firm as sufficient for the payment of its debts.

It is contended, however, that the sale made by the administrator was conditional, that the condition was not complied with, and that consequently, the title to the goods did not pass to the purchaser. It appears that the purchaser executed his individual note to the administrator for one half the value of the goods, being the price agreed upon, with an understanding that he was to procure some person to execute the note with him as his surety. The parties afterwards agreed that if the purchaser would obtain the appointment of guardian, for the children of the deceased partner, and execute bond and security as such, that the security required by the terms of the sale should be dispensed with, and the price of the goods should remain in his hands as guardian. In pursuance of this agreement he was appointed guardian, and executed a guardian's bond with approved security. The purchase was then complete, and the title to the goods was vested absolutely in the purchaser. As between the parties themselves, the price of the goods must be regarded as money in the hands of the guardian as soon as he had qualified and executed a bond. The right to demand security upon the note was waived by the administrator, under the supposition that the fund would be sufficiently secured by the guardian's bond; and by the terms of the contract the purchaser was to retain the price of the goods in his hands as guardian. Although, therefore, the note was not surrendered by the administrator to the purchaser, nor his receipt taken for the amount as guardian, yet the omission of these formalities did not affect the essential nature of the transaction, nor change its real character. The price of the goods must, therefore, be regarded as money in his hands as guardian, which the administrator may have a right to re-

quire him to refund, if it be necessary for the payment of debts.

The administrator, in the suit which he brought, asserted a claim against the partnership effects for the amount of a large debt due from the surviving partner to the firm. That, however, is not a debt against the firm, but it is a debt due to the firm by one of the partners, which will have to be taken into the estimate merely for the purpose of ascertaining the amount of their respective interests in the surplus. But if it were a debt due by the firm to one of the partners, its payment would depend upon the existence of a surplus after the payment of the firm debts. Advances to the firm, and advances from it, do not constitute debts strictly speaking, but are only items in the account between the partners, in the winding up of the concern. (*Story on Partnership*, §348, *p.* 522; *Simrall* v. *O'Bannons*, 7 B. *Monroe*, 609.)

From the principles herein stated it results:

1. That the surviving partner, being the sole owner of the merchandise, had a right to make an assignment of it for the payment of his creditors, and the claimants under the deed of trust, made by him for that purpose, have a right to its proceeds, and also to all the debts that were created after the purchase made by the surviving partner, during the time he carried on the business in his own name.

2. As the surviving partner had a right to control the assets of the firm, and apply them to the payment of the debts of the partnership, he could legally appropriate them to the payment of any of the debts. He had the right to prefer some of the creditors to others, and therefore the partnership creditors, whose debts were secured by the deed of trust, are entitled to the firm assets contained in the deed, so far as they may be necessary for the payment of their debts. The estate of the deceased partner will not be injured by such an application of the assets of the firm. If the assets are all honestly and fairly applied to the payment of the partnership debts, the

WILSON, &c.
vs.
SOPER, &c.

3. Advances to the firm by one of its members, do not constitute debts of the firm, but merely matters of account between the partners, to be settled in the final adjustment of the partnership. (*Story on Part.* §348, 522; 7 B. *Monroe*, 609.)

4. A surviving partner having purchased the interest of the representative of his deceased partner, may lawfully make an assignment; and the beneficiaries in the deed have a right to the proceeds, as well as the debts subsequently created to him, after the purchase.

5. A surviving partner having the right to' control the assets to pay the debts of the firm, may lawfully pay any of the debts, and prefer some creditors to others; and if an assignment be made preferring

Wilson, &c.
vs.
Soper, &c.
———
one creditor of the firm to another, the administrator of the deceased partner cannot complain, if the assets be all appropriated to the firm debts.

6. The administrator of a deceased partner has a right to have the assets of the firm appropriated to the payment of the partnership debts; but if he sell the goods on hand to the survivor, they are converted, and become the individual property of the survivor. The claim of the creditors of a partnership to satisfaction out of the partnership assets, is superior to the claim of a separate creditor under a deed of trust, if the trustee knew their character.

7. Where an administrator pays over to the guardian, he has a right to have refunded to him so much of the fund as is necessary to pay debts.

liability to which the estate of the deceased partner will be subjected, if there be a deficiency, is precisely the same, whether they be distributed ratably among all the debts, or applied to the payment of some, to the exclusion of others.

3. The administrator of the deceased partner, has a right in equity to have all the partnership effects of every description, including all the debts due to the firm, applied to the payment of the debts owing by it. The goods on hand are not, however, to be considered as a portion of the partnership effects, as they, by the sale made by the administrator, had been converted into the sole property of the purchaser. Nor can this equity of the administrator deprive any of the firm creditors of the provision made for the payment of their debts by the deed of trust, but it is superior, as against the assets of the firm, to the claim of the separate creditors of the grantor under that deed, inasmuch as the trustees were apprized, when the deed was executed, that a large amount of the debts and choses in action transferred therein were the assets of the firm; and the beneficiaries are affected by such knowledge, if they were ignorant of the fact themselves, which is not at all probable. One member of a firm has no right to appropriate partnership effects to the payment of his individual debts, without the assent of the other partners.

4. The administrator has a right to require the guardian to refund the price of the goods which, by the agreement of the parties, he was permitted to retain in his hands under the supposition that it would not be necessary for the payment of partnership debts. By the deed of trust, a portion of the individual estate of the grantor has been set apart to secure the payment of the amount due by him as guardian, and it should be applied to the extinguishment of that liability. If it should be insufficient for that purpose, the balance remaining unpaid will devolve on the sureties in his bond as guardian. But if the assets of

the firm are unequal to the payment of its debts, and the surviving partner should, out of his own estate, including the stock of merchandise that he purchased from the administrator, pay more than his proportion of the residue of the partnership debts left unpaid after all the assets of the firm have been exhausted, he would, to that extent, have a claim for contribution against the estate of the deceased partner, and be entitled to a discount therefor out of the price he agreed to pay for the goods. So much of the fund arising from the sale of the goods, if any, as the administrator may be entitled to, he must hold as assets to be paid ratably among the creditors, and such of them as are included in the deed of trust, and may, under its provisions, have their debts partially paid, will only have a right to claim a ratable proportion out of this fund, on the unpaid part, and not on the original amount of their demands.

The sureties in the guardian's bond are liable to the administrator for the price of the goods in the hands of the guardian. They would be liable for it to the wards, and as it is necessary for the payment of debts, the latter would have to refund it to the administrator, if they were to collect it on the bond. The liability of the sureties is not increased, by making them responsible directly to the administrator, who, for the benefit of the creditors, is entitled to an equitable substitution to the rights of the wards to the money in the hands of their guardian.

8. The sureties of a guardian are responsible to an administrator for the amount which it becomes the duty of the guardian to refund to the administrator, to pay debts against the estate.

The decree of the court below is, in many of its provisions, inconsistent with the views herein expressed and the principles of this opinion, and is therefore erroneous.

Cross errors are assigned by some of the defendants, because their claims, as partnership creditors, were not specially recognized and provided for by the decree which was rendered. But their complaint is premature, inasmuch as the court had not determined who were, or who were not, partnership creditors, but that question remained open for adjudication.

Wherefore the decree is reversed, and cause re-manded with directions to dismiss the bills of the creditors, so far as they attempt to impeach the deed of trust on the ground of fraud, and for further proceedings and decree in conformity with the principles of this opinion.

*Harlan* and *Hawes*, for plaintiffs; *Davis*, *Smith's*, and *Cord*, for defendants.